Our last case for argument is 24-1389 P Tech v. Arthrex. Mr. Evans, you're up again. May it please the Court. This appeal turns on the definition of two claim terms. One is not-less and the other is secure. Again, we have the issue of whether a secure suture is allowed to slide. We submit that it is not. It must be fixed at this point of attachment. The Board found that a suture that is secure, nonetheless, can slide. As with all of these cases, I think, or both these cases, I think the problem we have is you first have to define the word and then having properly defined it, you go through and- Well, I mean, doesn't this claim with regard to secure actually at 1.6 say it's secure and 1.7 say it's configured to slide through? So how do you reconcile that? Well, that, Your Honor, is because the word a suture could be more than one suture. And if you look in the spec, the spec has multiple sutures and the patent drafter drafted with reliance on the idea that when you say a suture, it means one or more. And in this case, the first one or more was secure and the second one or more could slide. In the spec, there's no suture that both slides and is secure at the same time. And you have to read the claim in light of the spec. And here, if one construction reads on the spec and the other does not, then I submit that the construction that reads on the disclosure and the specification is the proper construction. Here in the prior art, they had the Fumex bone anchor, which was implanted or pushed into a passage in a bone. Just out of curiosity, I mean, the claim at 1.6 and 1.7 both say the flexible hollow fastener isn't that antecedent basis so that we know they're talking about the same one in both instances? So there aren't two different ones here, one that's secure and one that's configured to slide? Well, the hollow fastener is actually the anchor of the bone, but the flexible elongated fastening member is configured to slide. That is the suture. That's correct.  And I think the is just going back to the antecedent basis where there can be more than one suture. No, no, that's not what the means. Where does antecedent basis for the is the thing that was mentioned before? Where is it first mentioned in this claim? It's the flexible elongated fastening member in the second. Right, that's not two, right? That's an A, flexible elongated fastening member extending through the flexible hollow fastener. So that's a single one. Well, it could be more than one. It doesn't have to be a single one. A can be one or more. Okay, why don't you move on to your knotless argument? I think we've secured all the time we got for that secure argument today already, but...  For knotless, Dr. Pedowitz testified that knotless in this context where you're talking about how you secure a fastener into a body tissue or a bone is different than how you would knotlessly attach a suture to an anchor or to some other construct to which you're going to attach the suture. And so you're looking at two different contexts. And the board understood that. We used the word coin. That was an unfortunate use of the word. But the point we were trying to make, the point the board did understand is that the conventional use of knotless for use in tying sutures to things was different than a different structure, than the structure of a fastener being pushed into a bone. The hard thing for me is, I'm 100% with you on the plain and ordinary meaning of knotless to me, you know, that this knotless fastener's got to show up with no knots in it and you can't make a knot out of it. That is what knotless suture, you know, would be or in this case, what is it? Knotless, the hollow fastener is knotless. That to me means there shouldn't be any knots in it. It seems pretty straightforward. The problem is, there's this special word in the art that has a different meaning, knotless suture anchor, where everyone seems to agree that means you don't make a knot when you're putting it in, but it doesn't somehow preclude the fact that it might have a pre-existing knot in it. I don't understand that to be consistent with my plain and ordinary meaning of the word, but I'm also not as skilled artisan. And both parties seem to have agreed that there is an art-specific meaning to knotless when used as a... When attaching a suture as distinguished from when attaching an anchor or a fastener into a bone or into a body part. Wait, so you're saying there's a difference between retaining a suture within a fastener. You agree retaining a suture within a fastener is the chief explanation, but then you say it's different when retaining fasteners themselves? When you retain the fastener into the bone. So you have three parts. You have the suture that has to connect to the fastener. The fastener has to connect to the bone. And when you have the three in combination, the word knotless was used when the doctor is trying to attach the suture to something that's already anchored in the bone. You can't tie a knot in a bone. Everyone agrees with that. There's just no room in there. You can't do it. So to say it's a knotless bone anchor is like saying, you know, everyone knows it's a knotless bone anchor because you can't tie a knot in it if you want to. And in the prosecution history, they showed you figure six of the application, of the 440 application, not the patent, but figure six of the application, where they had a mechanical fastener that was mechanically secured to the bone. And in the patent office, the examiner said that is a knotless fastener. And we agree because there is no knot. It's just a mechanical fastener into the bone. And what's going on with this claim language is it's saying you need that type of mechanical fastening into the bone without a knot. And here, Dr. Pedowitz said it's a knot. Their expert, Dr. Jordan, said it's a knot. He said as you tension it, it becomes a bigger knot. So you use a bigger knot to hold it in place. Well, if you're using a bigger knot, how can it be a knotless structure? Well, for that part, you're assuming that we agree with your construction of knotless. Like you've now moved past the construction point and into, I think, the application point. But how do I get past the board's construction? The board used extrinsic evidence to decide that this knotless term had a special meaning in the art. And they defined the art. Don't I have to give deference to that? Whenever I see the board using extrinsic evidence for a claim construction, I think that means I have to give substantial evidence deference to what they conclude about that evidence. I would say unless the intrinsic evidence resolves the issue. When the intrinsic evidence is reviewed de novo, and if the intrinsic evidence resolves the issue, you don't get to the extrinsic evidence. Well, that doesn't make sense because that would mean that whenever there's a special meaning for something in the art, you would never get to it. Right? That can't be the case. I mean, if there's like a layman's understanding of a word, you know, that can't be the same here. They gave this word knotless. Both parties seem to accept that in some instances, it has a different meaning than what me, not ordinarily skilled artisan, but just a random person would think it means. And they used extrinsic evidence, the board did, to kind of get to that conclusion, didn't they? Well, what the board did is the board conflated attaching a suture to a fastener with attaching a fastener to a bone. And those are two distinct... I understand your argument, but the problem for me is the board kind of said, in this art, you know, this has a specialized meaning and here's what it means. It's different than what you might ordinarily think the word means. So I don't, I'm just trying to understand if that's part of the legal part or part of the factual part. Well, I think claim construction is a question of law and you have to figure out for yourselves what it means. I think the fact that they injected this application, that is not what the claim is directed to. The claim is directed to securing the fastener into the bone. And when you're talking about that, that's the part where the claim requires to be knotless. And if you do that with a knot, that is not the same thing as attaching a suture to something that's already attached to the bone. They're just two different parts and I believe the board erred in conflating them. Nobody said that those two conflate and nobody said the two are the same. They were two distinct things and the board examined them as two distinct things. The board said, hey, we have to decide whether one applies to the other. And when it posed that question, it made its own conclusions about it. Do you want to save the remaining time for rebuttal? Sure. Thank you. Thank you. Good afternoon, your honors. May it please the court. There are two claim construction disputes. I plan to spend the majority of my time on the second one, which is knotless. I would just point out with regard to secure that the only argument that we heard today as to how to reconcile the fact that the claim requires the suture to be both secure and able to slide is that a or the might refer to two or more different sutures. That argument where there has been a used or an indefinite article with then using the later in the claim was rejected multiple times by this court, most notably in the In Re Varma case. Where in a playful example, the court said, for a dog owner to have a dog that rolls over and fetches sticks, it does not suffice that he have two dogs, each able to perform just one of those tasks. That's exactly the case that we have here. The appellant is suggesting that you can have two different sutures, one that has each of these claim characteristics. That has been repeatedly rejected by this court. Moving on then to knotless. There is no dispute that within the orthopedic industry, at least in some contexts, knotless refers not just to the absence of any knot, but to the absence or elimination of knot tying by the surgeon during the surgical procedure. Appellant or PTAC has tried to avoid the clear import of that known meaning by suggesting... Again, does it mean both? I think you just said it means both. Does it mean both? No, it does not. It does not mean the absence of a knot. It means the absence of knot tying, the absence of tying a knot during a procedure. A preformed knot to the game? Absolutely. How is something knotless if you're bringing it and it's got a knot in it? It's just the way that the word is used. I mean, it's football. We all know that we are not using our feet to play football. We know what that word means even as ordinary people. But within this industry, the meaning of knotless refers to the absence of knot tying. That was agreed to by both of the experts, but it's also within several examples that we put into the record. And we chose these prior art examples for a very particular reason to get over the question that might be raised by Your Honor. I'm just curious what you think about field goals. Do you do those with your hands? Field goals? Oh, you kick those. That's true. So there is some foot involved, but certainly the touchdowns are going to be with the hands and not the feet. So I want to turn, Your Honors, to the extrinsic evidence. I think here both the extrinsic as well as the intrinsic evidence are supportive of knotless, and that is what the Board found. But the extrinsic evidence, and this is described at page 37 of our brief, each of these references is provided in the appendix starting at 12.934. And these examples were chosen for this reason in particular. They all refer to the invention being a knotless suture anchor. And there's no question that suture anchor and fastener in this context are interchangeable. So each of these talks about all of the problems of tying knots during these types of procedures. They want to overcome that. Knots are hard to put in. They are time-consuming. They can come back out. So all of these problems were there, and they wanted to overcome these by creating a knotless suture anchor. But each one of these references, and each one of them then describes what they've invented as a knotless suture anchor, each one of these references, again as described in our brief, contains a knot within the plain and ordinary meaning, or within, excuse me, the plain English understanding. They either have preformed knots, or there is going to be a tightening of the suture while the insertion is taking place that under P-TECH's definition would constitute their creation of a knot. But they are referred to as knotless because none of these require the surgeon to actually tie a knot during the procedure. P-TECH again has tried to, and the board agreed with that in both of the relevant proceedings here, and found that these references confirm how knotless is used in the industry. And so was that in the terms of knotless suture anchor, or what is the industry in which that definition of knotless should apply? It is knotless suture anchors, which P-TECH has confirmed, and this is, oh I've got the exhibit number, but it is interchangeable with the term fastener in this claim. And the board found that this context is relevant to the patented invention. The one example that I want to highlight is at Appendix 1298. This is actually an Arthrex patent, or patent publication, that's entitled Interference Fit Knotless Suture Anchor Fixation. And P-TECH has tried to get around all of these prior art references by suggesting that they either relate to suture retention or to tissue retention, but not to anchor retention. But this patent and the knots that are created, for example in Figures 7 and Figures 8, are described in Paragraph 11 and Paragraph 22 of this publication as being specifically, quote, to enhance the pull-out strength of the suture from the anchor body or to create a lump or suture nest that likewise improves the pull-out strength of the anchor. So these, if we all want to turn there, it's again 12986. Now, one of the arguments opposing counsel made was that this is not really involving tissue. It's involving bone, and you can't have knots when you're tying basically in the bone space. Are these claims to bone or to tissue? They are not. They are to tissue generally. That's exactly what the board found in its decision at page 30. The board also found, by the way, that that argument was waived, that it was untimely, it was presented for the first time in the SIR reply. That finding is at 29 and was not challenged on appeal. You wanted us to go to some page. What page was it you wanted us to go to? The reference that starts at 12986, and in particular what you see in Figures 6, excuse me, 7 and 8. As the anchor is being placed into the bone and the description that follows is in paragraphs 11 and 22, the suture is being either twisted or it says it can come pre-knotted to improve the pull-out strength. So the purpose of these knots is exactly so that this, to better retain the suture anchor within the bone. It's exactly the context that PTAC says is missing. The other point that I would make there is that the board disagreed and found that the context of these claims and this patent is broader than just anchor retention. The claims very clearly also require the anchoring of suture. The board found that, for example, at Appendix Page 18, where it referred to Claim 1 of the 453 patent as requiring the hollow fastener to deform from the first configuration to the second configuration to provide an anchor for the suture as the suture is tensioned relative to body tissue. So this was, again, a finding by the board that the context of these claims applies exactly to the context in which both parties agree that knotless is a term of art. The opening line of PTAC's appeal brief further proves this point. Although my opposing counsel is now trying to suggest that the context is not tissue retention, the opening line of their appeal brief says that these patents, quote, are generally directed to fastener systems for positioning deformable fasteners to connect body tissues together. That's exactly the context in which the board found and all the parties agreed that knotless has a known meaning, which is the elimination of tying of knots. For that reason and the others, unless the board, or unless the panel, excuse me, unless your honors have any further questions, we will rest on our briefs. Okay, thank you, counsel. Mr. Evans, you have some rebuttal time. Thank you, your honor. The multiple prior references that they put into their reply brief, I'm sorry, their surreply in front of the board, they all involved mechanical anchors that secure into bone and then there was a suture that was connected somehow to the mechanical anchor. That supports our theory, that it was a knotless anchor that was secured into the bone. The board, when it looked at all that, it said, you put it in too late, we can't figure it out, and we're not going to try, and they didn't look at it. That's in the board decision. With respect to body tissue, while I agree that most of the claims say body tissue, claim 14 of the 453 patent talks about implanting the fastener into bone. And if it's the same fastener, claims are supposed to be given the same meaning, if it's the same fastener in claim 14 as it is in claim 1, and you can't tie a knot in a bone. Or is it possible you just didn't separately argue that dependent claim, which is narrower than the independent claim that covers tissue and everything else? It's a separate independent claim 14. Okay, but you didn't separately argue it, and the board said you waived it. The board found that it was not possible to tie a knot in a bone, and they went on to discuss it. They said, you waived it, but we're going to discuss it anyway. And I just wanted to respond to that part where the board did discuss it, to say we were on point with that. I don't have anything further if there are any questions. Okay. Thank you. Okay, we thank both counsel. This case is taken under admission.